IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CORY BURGESS,** | § | **CIVIL ACTION NO.: 4:21-cv-1954** |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | **JURY DEMANDED** |
| **COLE ABA SOLUTIONS, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

_____

**PLAINTIFF'S ORIGINAL COMPLAINT**
_____

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Cory Burgess (hereinafter "Plaintiff") in the above-referenced matter, complaining of and about Cole ABA Solutions, Inc. (hereinafter "Defendant"), and files this Original Complaint, showing the following to the Court:

**I. PARTIES**

1. Plaintiff Cory Burgess is an individual residing in Harris County, Texas. Plaintiff was employed by Defendant, who conducts business in Harris County, Texas. Plaintiff is a citizen of the State of Texas and of the United States.

2. Defendant Cole ABA Solutions, Inc. is a for-profit corporation operating out of Spring, Texas. Defendant's headquarters are located at 16835 Deer Creek Drive, Suite 220, Spring, Texas 77379 and can be served by and through its registered agent, Adam Cole at 8323 Southwest Freeway, Suite 440, Houston, Texas 77074.

**II. JURISDICTION**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which

confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. § 2000e et seq., as amended, and (iii) 42 U.S.C. § 1981 et seq., as amended.

4.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because the Defendant and the Plaintiff transacted business within this judicial district and a substantial part of the events or omissions giving rise to this Complaint occurred in this district. At all times pertinent to this Complaint, Defendant maintained offices, conducted business, and resided in this district.

### III. FACTS

6.     On June 17, 2019, Plaintiff was hired by Defendant as the Clinic Supervisor working at the Cypress, Texas location.

7.     From 2019 to February 2020, while working in the Cypress location, Plaintiff received a lot of praise from Defendant as a result of the work he was doing with the staff, the clients, and the families. Plaintiff received an email on August 26, 2019 from Defendant's leadership, including the owner, congratulating him on his work. The nature of work was warm and accepting towards Plaintiff while at the Cypress location. Plaintiff worked at the Cypress location until he was moved to the Spring, Texas location as the Clinic Manager on March 2, 2020.

8. While employed at the Cypress location, Plaintiff developed a relationship with one of the technicians, Breanna Robles (hereinafter "Mrs. Robles'). The relationship started as a friendship that became physical quickly. It should be noted that Mrs. Robles did not receive any special treatment or favoritism during the affair at work. Mrs. Robles became pregnant in October 2019. As a result of the pregnancy, Plaintiff felt pressured to continue relationship despite moral conflicts. On January 7, 2020, Plaintiff informed his supervisor, JoAnna Kaul (hereinafter "Mrs. Kaul"), that him and Mrs. Robles were expecting a baby. Mrs. Kaul congratulated Plaintiff and informed him that she would talk to the president of the company, Jason Stark (hereinafter "Mr. Stark"), to get guidance on the matter. It should be noted that Mrs. Robles and Mrs. Kaul are very good friends.

9. On January 24, 2020, Plaintiff received a final written warning regarding his fraternization with Mrs. Robles. The warning stated Plaintiff has violated Defendant's Handbook Policy 4.21. This policy states "A supervisor should not engage in any form of relationship with a subordinate employee that could potentially have the appearance of creating or promoting favoritism or special treatment for the subordinate employee." It should be noted that Mrs. Kaul and Mrs. Robles engaged and continue to engage in a relationship that violates this same policy.

10. When Plaintiff moved to the Spring location, he immediately noticed the environment and energy was different. The confidential information regarding the relationship between himself and Mrs. Robles had been disclosed. It was apparent that the staff at the Spring location did not approve of the relationship between Plaintiff and Mrs. Robles. Plaintiff asserts that the leadership of Defendant was the sources of this confidential information getting out to other employees.

11. In May 2020, not long after Plaintiff had moved locations, Plaintiff and Mrs. Robles ended their relationship due to Plaintiff's moral conflict. Shortly after the breakup, Plaintiff began to notice a difference in how Mrs. Kaul responded to his requests. It should be noted again that Mrs. Kaul and Mrs. Robles were very close. Plaintiff noticed that Mrs. Kaul would take longer period of time to respond to Plaintiff via email or text. Meetings that Plaintiff was supposed to be privy to were re-scheduled frequently or canceled altogether. Mrs. Kaul would have meetings with the other supervisory staff and Plaintiff was not included. Plaintiff began to feel that the environment was becoming hostile. This began to take a strain on Plaintiff's mental health.

12. Plaintiff's deteriorating mental health was contributed to by Defendant's staff as they made discriminatory remarks towards Plaintiff each day. Plaintiff's reputation was further slandered due to a lack of decorum on part of Mrs. Kaul and Victoria Wood (hereinafter "Mrs. Wood"), a Board Certified Behavior Analyst (hereinafter "BCBA") at the Spring location.

13. On July 19, 2020, Plaintiff was at the hospital, celebrating the birth of his daughter. Plaintiff received a text message from an employee of Defendant stating that she needed to take the day off of work on July 20, 2020, due to an emergency. Because Plaintiff was out of the office, not on the clock for work duties at the time, and because the employee was not under Plaintiff's direct report, Plaintiff forwarded the text message to a group text message. The group text message included himself, Mrs. Kaul, Mrs. Wood, and Justine Alanis. Defendant ultimately fired the employee due to her failure to let her direct manager know that she would not be in the office for that particular day.

14. Plaintiff's work environment became more hostile and toxic following the termination of the female employee. There was gossip amongst the staff about the situation between Plaintiff and Mrs. Robles. Employees were stating amongst themselves that Plaintiff

should be terminated. Plaintiff was often blamed for the female employee being terminated. New employees were told by veteran employees to not trust Plaintiff. Employees made numerous, baseless complaints about Plaintiff to Mrs. Kaul. Plaintiff let Mrs. Kaul know that he felt that the environment was hostile and that he felt targeted. Mrs. Kaul stated to Plaintiff that the ones that were meant to be gone would leave and that he would be able to start over with new employees, which would change the environment. This never happened. The gossip continued with newer employees. This was due to the failure of leadership to step in and address the issues. Plaintiff was repeatedly put in situations where he had no support or guidance from Defendant.

15. On August 3, 2020, Plaintiff was told by Mrs. Kaul to write up an employee due to her having a relationship with the parent of a client. Under Mrs. Kaul's suggestion, the employee was to be written up for the relationship and be immediately pulled from providing services to the particular client. Plaintiff told Mrs. Kaul that he did not feel comfortable writing up the employee for being in a relationship given his past history and the numerous rumors amongst employees about himself and Mrs. Robles. Mrs. Kaul instructed Plaintiff to still write up the employee. Plaintiff had Mrs. Kaul proofread the write up to ensure that it fell within the company's guidelines and that he was quoting the correct handbook policy that the employee violated. Mrs. Kaul provided Plaintiff with only one piece of feedback which was to remove the section that informed the employee of which staff member informed him of the relationship. The reason for this was because Mrs. Kaul was the staff member that informed Plaintiff of the relationship and Plaintiff felt Mrs. Kaul was trying to place herself in good favor with the employee by not letting her know she was the ultimate reason for the write up. Following the employee receiving this write up, the employees' relationship with Plaintiff was further impacted and his reputation in the office continued to be tarnished. The employee submitted a letter of resignation as a result of the write

up. It should be noted Mrs. Kaul met with Plaintiff and the employee regarding the relationship. Mrs. Kaul praised employee for the work she did with client and family, and requested for employee to finish her time with the company providing services to the client in their home, despite the violation of company policy for a dual relationship.

16. The continued hostile work environment, the demand of the job, and the ever-changing landscape of the clinic led to mental stress. Plaintiff sent a text message to Mrs. Kaul on October 23, 2020 stating that he was "breaking down mentally between personal issues and resurfacing work issues." Shortly after, Plaintiff and Mrs. Kaul had an in-person meeting where Plaintiff requested to take two (2) mental health days off of work as a way to regain his composure and preserve his mental health. Plaintiff made Mrs. Kaul aware that one of the personal issues was the fact he had not been able to see his daughter for 2 weeks. It should be noted that Plaintiff believes Mrs. Kaul was already aware of this fact due to her close relationship with Mrs. Robles.

17. On July 24, 2020, Plaintiff was written up for having late notes. It should be noted that Plaintiff was not the only BCBA with late notes. However, Plaintiff was the only employee to be written up for having late notes.

18. On Friday, October 2, 2020, Plaintiff was given a final write up for failure to enter hours into the billing system. However, it was communicated to Plaintiff that the hours needed to be entered into the billing system by Tuesday, October 6, 2020 by ten o'clock in the morning.

19. On November 11, 2020, Plaintiff had a meeting with Mr. Stark and Mrs. Kaul. This meeting was very hostile in nature from the start. Plaintiff felt as if the two of them were trying to get Plaintiff to say they should fire him due to the missing notes. Mr. Stark and Mrs. Kaul brought up "ethical implications and accuracy" of the notes. However, Plaintiff had evidence that he was not the only employee missing notes and that all of the BCBAs, including Ms. Kaul, had a list of

notes that were missing, dating back to the beginning of 2020. Mr. Stark took a hostile tone during the meeting and Plaintiff felt that he was being treated unfavorably compared to the other BCBAs. It should be noted that Mr. Stark did not meeting with any other BCBAs on that day to address their missing notes.

20. On November 9, 2020, Plaintiff was involved in an automobile accident in which injuries to his neck and back were sustained. As a result of these injuries, Plaintiff filed, and was approved for, emergency FMLA through HR. Defendant was informed of leave on November 12, 2020 and the leave was to start November 13, 2020. Plaintiff asserts that while on leave, no attempts were made by Defendant to check on his well-being. Ultimately, Plaintiff was terminated from his position by a request for the return of company equipment on March 26, 2021, while he was still out on FMLA.

21. Plaintiff asserts that all discriminatory events are due to the events that were going on between Plaintiff and Mrs. Robles. Plaintiff communicated with Defendant several times of the hostile work environment he was enduring and the impact it was having on him. The maltreatment led by Mrs. Kaul, approved by Defendant, was directed towards Plaintiff. Plaintiff was never afforded a meaningful or fair investigation.

## IV. CLAIMS

### CLAIM 1 – TITLE VII GENDER DISCRIMINATION

22. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

23. Defendant, intentionally engaged in unlawful employment practices involving Plaintiff because of his gender (i.e., male), including discrimination and retaliation.

24. Plaintiff can demonstrate that he was within a protected class because he is a male.

Plaintiff can show that he was qualified for the position.

25. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of Plaintiff's employment in violation of federal discrimination laws; or, limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's status as an employee because of Plaintiff's gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

### CLAIM 2 – TCHRA GENDER DISCRIMINATION

26. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

27. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his gender (i.e., male).

28. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affected Plaintiff's status because of Plaintiff's gender (i.e., male), in violation of the Texas Labor Code § 21.051 et seq.

### CLAIM 3 – ADAAA and TCHRA DISABILITY DISCRIMINATION

29. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

30. Defendant employs more than fifteen employees, and is an "employer" within the meaning of the ADAAA, and the TCHRA. Plaintiff filed a charge of discrimination with the EEOC and has since received a "right to sue letter." Plaintiff files this action within 90 days

of actual receipt of his "right to sue" letter.

31. Plaintiff suffers from a disability under the statutory definition provided in the ADAAA and the TCHRA because Plaintiff had an actual impairment, a record of impairment, and/or was regarded as having impairment by Defendant. Plaintiff actually had or was regarded as having a disability that substantially limited one or more major life functions, including injuries to his neck and back.

32. Plaintiff was and is a qualified individual for the job in question. With reasonable accommodations, Plaintiff can and did perform the essential functions of his job. Defendant refused to engage in good faith in the interactive process with Plaintiff to determine reasonable accommodations, and fired him rather than provide accommodations including using sick leave after being involved in an automobile accident.

33. An adverse employment action was taken against Plaintiff on account of his disability, because he was ostensibly fired for no reason, and after having formally requesting accommodations, including medical leave for his treatment.

34. Plaintiff was treated less favorably than non-disabled employees.

35. Defendant violated the ADAAA and the TCHRA by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's record of, actual or perceived disability.

36. Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Further, this discrimination was done with malice or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore also

entitled to recover punitive damages.

## CLAIM 4 – HOSTILE WORK ENVIRONMENT

37. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

38. Plaintiff was subjected to unwelcome harassment based on his gender when his supervisors continuously questioned his performance, recording every miniscule detail of Plaintiff's performance, and refused Plaintiff's numerous requests for accommodations.

39. The harassment complained of affected a term, condition or privilege of Plaintiff'semployment in that it, among other effects, it affected his ability to succeed at his job and caused him severe emotional stress.

40. As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguishand other pecuniary and non-pecuniary losses in the amount to be determined at trial

## V. JURY DEMAND

41. Plaintiff demands a jury on all issues to be tried in this matter. As such, Plaintiff submits a jury demand and herein submits the jury fee.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear, and answer herein, and that on final trial, Plaintiff has a judgment against Defendant for the following:

    a. All damages that Plaintiff may be entitled to pursuant to this Original Complaint, or any amendments thereto, including (but not limited to) back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

    b.    Compensatory damages, including (but not limited to) emotional distress;

    c.    Past, present, and future physical pain and mental suffering;

    d.    Punitive damages;

    e.    Liquidated damages;

    f.    Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

    g.    Pre-judgment interest (at the highest rate permitted by law);

    h.    Post-judgment interest from the judgment until paid (at the highest rate permitted by law);

    i.    Costs of Court; and

    j.    Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully Submitted,



_____

Alfonso Kennard Jr.
Texas Bar No.: 24036888
Southern District No.: 713316
Alfonso.Kennard@kennardlaw.com
Eddie Hodges, Jr.
Texas Bar No.: 24116523
Southern District No.: 3479748
Eddie.Hodges@kennardlaw.com
5120 Woodway Dr., Ste. 10010
Houston, Texas 77056
Tel.: (713) 742-0900
Fax: (832) 558-9412
**ATTORNEYS IN CHARGE FOR PLAINTIFF**